**Elizabeth Ann WINGER, Appellant,**

v.

**Eric Rodger PIANKA, Appellee.**

**No. 3–90–077–CV.**

Court of Appeals of Texas,
Austin.

May 6, 1992.

Rehearing Overruled June 3, 1992.

Philip C. Friday, Jr., Austin, for appellant.

J. Terry Weeks, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

In this case we must determine if the Texas Constitution authorizes persons about to marry to partition or exchange between themselves the salary and income they will earn during their future marriage, causing the portion set aside to each to become the respective spouse's separate property. Before their marriage in 1983, the parties signed a written property agreement. The trial court ruled that the agreement was valid and enforceable. Elizabeth Ann Winger appeals from a divorce decree dividing the parties' property

in accordance with the agreement. We will affirm the judgment of the trial court.

On July 18, 1983, Elizabeth Winger and Eric Pianka signed a premarital agreement that provided in relevant part:

> Planning to engage in holy matrimony, we, the undersigned parties, do hereby undertake this agreement to waive any and all rights to "community property," should this marriage terminate in divorce. Specifically, neither of us seek to acquire any money or property owned by the other prior to, or accrued by the other during the tenure of this marriage. Thus, each of us reserves full ownership of the property listed below, along with any additional equity, appreciation in value, or income or other proceeds that may be gained during the course of said marriage:
>
> PROPERTY OWNED SOLELY BY ERIC R. PIANKA:
>
> . . . .
>
> 3. Any and all income, including salaries, tax refunds, etc.
>
> . . . .
>
> 5. Retirement funds with V.A.L.I.C.
>
> . . . .
>
> PROPERTY OWNED SOLELY BY ELIZABETH ANN WINGER:
>
> . . . .
>
> 4. Any and all income, including salaries, tax refunds, unemployment compensation, etc.

During the marriage, Pianka earned some $163,000 as a professor and rancher, while Winger lost money operating her business, the Flat Creek General Store. In its final judgment granting the divorce, the trial court divided the couple's property in accordance with their premarital agreement. Pianka was awarded all of the $55,538.64 that he contributed to his retirement account from his earnings during the marriage.[1]

In two points of error, appellant complains that neither the Texas Constitution nor the relevant statute in effect on the date the agreement was signed authorized the premarital partition or exchange of future earnings. We will overrule both points of error.

### THE 1980 CONSTITUTIONAL AMENDMENT PERMITS PERSONS ABOUT TO MARRY TO PARTITION OR EXCHANGE THEIR FUTURE EARNINGS

■ In her first point of error, appellant complains that the trial court erred in concluding that the parties' agreement validly partitioned their future personal earnings because the Texas Constitution does not authorize the prenuptial partition of parties' future earnings.

Texas has retained the basic features of the community property system rooted in its Mexican and Spanish heritage, but its marital property law has been changed numerous times as a result of constitutional amendments, legislative enactments, and judicial decisions. Thomas M. Featherston, Jr. & Julie A. Springer, *Marital Property Law in Texas: The Past, Present and Future*, 39 Baylor L.Rev. 861, 862 (1987). Historically, neither married persons nor persons about to marry could by "mere agreement" convert the character of income or community property into separate property. *Williams v. Williams*, 569 S.W.2d 867, 870 (Tex.1978); *see also Kellett v. Trice*, 95 Tex. 160, 66 S.W. 51, 53–54 (1902); *King v. Bruce*, 197 S.W.2d 830 (Tex.Civ.App.1946), *rev'd on other grounds*, 145 Tex. 647, 201 S.W.2d 803 (1947). The Texas Constitution was amended in 1948, making it possible for spouses to partition their existing community property. Tex. Const. art. XVI, § 15 (1948, amended 1980); Joseph W. McKnight, *Family Law: Husband and Wife*, 35 Sw.L.J. 93, 101 (1981).

In 1980 the Texas Constitution again was amended, authorizing spouses as well as persons about to marry to partition or exchange their interests in property then existing or to be acquired in the future. The amended article provided in relevant part:

---

1. Appellant does not challenge by point of error the wording of the agreement or any of the trial court's findings of fact as to the separate character of any asset.

All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse; and laws shall be passed more clearly defining the rights of the spouses in relation to separate and community property; provided that *persons about to marry* and spouses, without the intention to defraud preexisting creditors, *may be written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property and estate of such spouse or future spouse;* and the spouses may from time to time, by written instrument, agree between themselves that the income or property from all or part of the separate property then owned by one of them, or which thereafter might be acquired, shall be the separate property of that spouse; and if one spouse makes a gift of property to the other that gift is presumed to include all the income or property which might arise from that gift of property.

Tex. Const. art. XVI, § 15 (1980, amended 1987) (emphasis added).[2]

Because the amendment does not expressly refer to salaries or personal earnings, a debate has ensued as to whether future personal earnings constitute "property ... to be acquired" that is subject to partition. W. Fred Cameron, Robert S. Hoffman & Alan V. Ytterberg, *Marital and Premarital Agreements*, 39 Baylor L.Rev. 1096, 1116 (1987); *see also* S. Christine Mercing, Comment, *The Uniform Premarital Agreement Act: Survey of Its Impact in Texas and Across the Nation,*

42 Baylor L.Rev. 825, 845–47 (1990). Many commentators and practitioners have assumed that salary and income are included within the meaning of "property" as used in section 15. Cameron, Hoffman & Ytterberg, *supra,* at 1116; *see also* Featherston & Springer, *supra,* at 886–87 (a "community free marriage" is possible because section 15 allows all future community property, including salary and wages, to be partitioned into the spouses' separate properties); Joseph W. McKnight, *The Constitutional Redefinition of Texas Matrimonial Property as It Affects Antenuptial and Interspousal Transactions,* 13 St. Mary's L.J. 449, 458 (1982) (the amendment's reference to community property clearly includes personal earnings).

Although this question is squarely presented here, other courts have struggled with the issue. Another court of appeals recently reached the same conclusion as we do. *Fanning v. Fanning,* 828 S.W.2d 135, No. 10–90–112–CV (Tex.App.—Waco, March 4, 1992, no writ). Others have implied that by premarital agreement parties may declare that future earnings of the spouses will be separate, rather than community, property. *See Chiles v. Chiles,* 779 S.W.2d 127, 128 (Tex.App.1989, writ denied) (upholding a premarital agreement that precluded the acquisition of any community property during the marriage); *Dewey v. Dewey,* 745 S.W.2d 514, 517 (Tex. App.1988, writ denied) (holding that husband's income was community property because premarital agreement did not mention salaries or state that there would be no accumulation of community estate); *Bradley v. Bradley,* 725 S.W.2d 503, 504 (Tex. App.1987, no writ) (premarital agreement specified that parties intended earnings from their "respective personal efforts" would be separate property, but such earnings were held to be community because spouses failed to partition their community estate yearly as required by their agreement); *see also Huff v. Huff,* 554 S.W.2d 841, 843 (Tex.Civ.App.1977, writ dism'd)

**2.** Article XVI, section 15 was amended again in 1987 to allow spouses to agree "that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." *See* Tex.Const. art. XVI, § 15.

(pre–1980 amendment holding that premarital agreement that future income would be separate property did not violate Article XVI, section 15).

### The Historic Context: What Did Texas Voters Decide?

Appellant argues that the historical context of the 1980 amendment shows that it addressed only income arising from separate property, not personal earnings. The primary rule in interpreting the Texas Constitution is to give effect to the intent of the voters who adopted it. *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989); *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 152 (1942); *Williams v. Castleman,* 112 Tex. 193, 247 S.W. 263, 265 (1922); *State v. Clements,* 319 S.W.2d 450, 452 (Tex.Civ.App.1958, writ ref'd).

Appellant suggests that the amendment was passed in response to specific federal court estate tax decisions. These cases held that where one spouse made a gift of income-producing property to the other spouse, even though the gift became the recipient's separate property, one-half the income the property produced thereafter nevertheless was includable in the donor spouse's estate. *See, e.g., Estate of Castleberry v. Commissioner,* 68 T.C. 682, 686–87 (1977), *rev'd sub nom., Estate of Wyly v. Commissioner,* 610 F.2d 1282 (5th Cir. 1980). The tax court reasoned that under Article XVI, section 15, the income arising from the separate property continued to be characterized as community property. *Id.* at 686–87.

Clearly, appellant is correct at least to the extent that the last provision of the 1980 amendment alters the result in *Castleberry:*

> [T]he spouses may ... agree between themselves that the income or property from all or part of the separate property then owned by one of them, or which thereafter might be acquired, shall be the separate property of that spouse; and if one spouse makes a gift of property to the other that gift is presumed to include all the income or property which might arise from that gift of property.

Tex. Const. art. XVI, § 15 (1980, amended 1987).

As further support, appellant points to the ballot description of the amendment as evidence of the voters' intent. The ballot description summarized the amendment as follows: "A Constitutional amendment allowing spouses to agree that income or property arising from separate property is to be separate property." Tex.H.J.R. 54, 66th Leg., 1979 Tex.Gen.Laws 3227. This summary reflects that, if adopted, parties by agreement could change the result reached in *Castleberry.* However, the Texas Supreme Court has rejected the argument that one may construe a constitutional amendment by the language presented to the voters on the ballot: "We do not think that it would be sound to permit the ballot form to have the effect of limiting the natural meaning of the language of the amendment itself." *Railroad Comm'n v. Sterling Oil & Ref. Co.,* 147 Tex. 547, 218 S.W.2d 415, 418 (1949). The voter is presumed to be familiar with the content of the proposed amendment when voting. *Hill v. Evans,* 414 S.W.2d 684, 692 (Tex. Civ.App.1967, writ ref'd n.r.e.). Accordingly, the language of the ballot is sufficient if it identifies the amendment and shows its character and purpose. *Id.; Whiteside v. Brown,* 214 S.W.2d 844, 851 (Tex.Civ.App. 1948, writ dism'd).

Although appellant correctly cites one factor prompting the change, the 1980 amendment also included provisions unrelated to *Castleberry.* The Texas Supreme Court recently considered the purposes sought to be accomplished by adoption of the 1980 constitutional amendment. *Beck v. Beck,* 814 S.W.2d 745 (Tex.1991). The court recognized that one purpose was to supersede the effect of *Castleberry. See id.* at 748. Another purpose, however, was to supersede the supreme court's own opinion in *Williams. See id.* at 747–48. In *Williams,* a couple about to marry executed a written agreement stating in part that each would retain all rights in their respective property owned at marriage or acquired during marriage, and further

agreed that income from their separate properties, as well as their salaries, would also remain separate. The supreme court held that this constituted a mere agreement attempting to characterize marital property before its acquisition in violation of the constitution and laws of Texas. *Williams*, 569 S.W.2d at 870. In *Beck*, the supreme court recognized that one purpose of the 1980 amendment was to supersede *Williams* so that persons about to marry could contract to recharacterize property they would receive during their future marriage. *See Beck*, 814 S.W.2d at 747–48.

In construing its terms, a constitutional provision must be interpreted so as to give effect to every phrase of the document; no provision ordinarily duplicates another, and provisions should not be interpreted so as to be rendered meaningless. *In the Interest of McLean*, 725 S.W.2d 696, 697–98 (Tex.1987); *Hanson v. Jordan*, 145 Tex. 320, 198 S.W.2d 262, 263 (1946). If we accept appellant's interpretation, portions of the pre-marital partition and exchange provisions are rendered meaningless.

Finally, we are aware that in the years since the 1980 amendment the practice of executing premarital contracts, sometimes partitioning future earnings, has become commonplace. Public acceptance of and acquiescence in legislative interpretations over a long period of time are particularly persuasive and are to be given serious consideration in construing constitutional provisions. *Director of Dep't of Agric. and Env't. v. Printing Indus. Ass'n*, 600 S.W.2d 264, 269 (Tex.1980).

### The Meaning of the Text

The 1980 Constitutional amendment allows persons about to marry to partition between themselves *"all* or *part*" of their property then existing or to be acquired" or to exchange between themselves "the community interest of one … in *any* property … for the community interest of the other … in other community property then existing or to be acquired." Tex. Const. art. XVI, § 15 (1980, amended 1987) (emphasis added). Appellant argues that future earnings cannot be governed by this amendment because it does not explicitly refer to "salaries," "income," or "earnings," and because these items are not "property" within the meaning of this amendment. We disagree.

First, Texas law defines "property" broadly. Property extends to every species of valuable right and interest. *Womack v. Womack*, 141 Tex. 299, 172 S.W.2d 307, 308 (1943); *see also* Ocie Speer, Law of Marital Rights in Texas 436 (1929); 1 Edwin S. Oakes, Speer's Marital Rights in Texas 508 (4th ed. 1961). If salary, personal earnings and income are not property, we are at a loss to know what to label money earned and received.[3]

Second, we disagree with appellant's argument because earnings, when received, are "community property" and thus are encompassed within the broad meaning of "property." The Texas Constitution defines separate property as the property of a spouse, both real and personal, owned before marriage or acquired during marriage by gift, devise, or descent. Tex. Const. art. XVI, § 15. By exclusion, and apart from proof of certain specific circumstances, all other property owned or acquired by married persons during marriage necessarily is community property.[4] *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925). As appellant recognizes, it is fundamental to the community property system that whatever is acquired during marriage by the toil, talent, or other productive faculty of either spouse is community property. *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex.1982); *see also* 15A Am.Jur.2d *Community Property* § 3, at 632. Thus, a spouse's personal earnings are community property. 15A Am.Jur.2d *Community Property* § 42. Community

---

**3.** The Uniform Premarital Agreement Act, adopted in 1987, defines "property" as "an interest, present or future, legal or equitable, vested or contingent, in real or personal property, *including income and earnings.*" Tex.Fam.Code Ann. § 5.41(2) (Supp.1992) (emphasis added).

**4.** "Community property consists of the property, other than separate property, acquired by either spouse during marriage." Tex.Fam.Code Ann. § 5.01 (1975).

property obviously is defined as one type of property. *See* Black's Law Dictionary 351 (5th Ed.1979); 8 Words & Phrases, *Community Property* 216, 221–25 (1951 & Supp.1991). Because earnings are community property, it follows that they must also be a form of "property."

Appellant cites us to several well-known cases decided before the 1980 Constitutional amendment which are not controlling here. Some of these cases stand for the proposition fundamental to the community property system that whatever spouses acquire by their joint efforts is community property. *See, e.g., Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676 (1953) (citing *De Blane v. Hugh Lynch & Co.,* 23 Tex. 25). Ironically, appellant insists that earned income is the basic component of the community property system but rejects the notion that the income itself is property contemplated by the constitution. Appellant stresses the imprudence of allowing couples to "opt out" of the community property system. We agree that shared earnings are the foundation of the community property system; we may even question the wisdom of allowing couples to eliminate the accumulation of community assets. Nevertheless, in interpreting the constitution, the court does not question the wisdom behind its provisions. *McLean,* 725 S.W.2d at 698 (citing *Lewis v. Independent Sch. Dist. of City of Austin,* 139 Tex. 83, 161 S.W.2d 450, 452–53 (1942)).

Furthermore, the Texas Supreme Court recently reviewed the history of Article XVI, section 15, and enunciated its support for premarital agreements in general:

> [O]ne purpose of the amendment was to uphold the intentions of spouses who entered into premarital agreements before 1980 ... and to supersede the effect of this court's decision in *Williams....*
>
> ....
>
> When the Texas Legislature originally proposed the adoption of the Spanish model of community property laws, it

failed to include a constitutional provision incorporating the Spanish rule that future spouses could contract to recharacterize their property as they desired. Early court decisions interpreted our community property laws as establishing an inflexible system that forbade contracts attempting to recharacterize community property. These decisions were the legal manifestation of the now outmoded belief that women were not capable of managing their affairs and needed the law's protection.

> ....

> We hold that the 1980 amendment to article XVI, section 15, of the Texas Constitution demonstrates an intention on the part of the legislature and the people of Texas to not only authorize future premarital agreements, but to impliedly validate section 5.41 of the Texas Family Code and all premarital agreements entered into pursuant to that statute. The legislature and the people of Texas have made the public policy determination that premarital agreements should be enforced.

*Beck,* 814 S.W.2d at 748–49 (citations omitted).[5]

We hold that the 1980 amendment to Article XVI, section 15, of the Texas Constitution permits persons about to marry to partition or exchange between themselves salaries and earnings to be acquired by the parties during their future marriage.

Appellant's first point of error is overruled.

## AGREEMENT IN CONTEMPLATION OF MARRIAGE

■ In her second point of error, appellant complains that the trial court erred in concluding that the parties' prenuptial agreement validly partitioned their future personal earnings because, even if the Texas Constitution authorizes such a partition,

---

5. One earlier commentator observed, "[T]he supreme court now seems to have recognized that in the absence of contrary legislation, the community property system is governed by general principles of Spanish law. Under those principles, spouses were permitted to freely contract away the community structure, either before or after marriage." 2 George D. Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis 738 (1977).

Family Code section 5.41(a) in effect at the time of the agreement did not.[6]

The Texas Family Code was amended in 1981 to implement the constitutional changes wrought by the 1980 amendment. The following statute provided for premarital agreements:

Section 5.41. Agreement in Contemplation of Marriage

(a) Before marriage, persons intending to marry may enter into a marital property agreement concerning their property then existing or to be acquired, as they may desire.

1981 Tex.Gen.Laws, ch. 782, § 1, at 2964 (Tex.Fam.Code § 5.41(a), since amended).[7] Appellant again complains that because the statute referred only to "property" and not to "salary," "income," or "earnings" these items could not be the subject of a premarital partition. For the reasons already stated, we disagree. Further, appellant complains that section 5.41(a) only called for persons intending to marry to execute a property agreement, while the constitution requires them to partition or exchange property. Because the statute did not expressly deal with or mention "partition," appellant argues the concept cannot be authorized by its terms. But in *Williams,* the supreme court stated that the statute should be construed as broadly as possible in order to allow the parties as much flexibility as possible within the confines of constitutional restrictions. *Williams,* 569 S.W.2d at 870.

Appellant's argument is one of semantics without merit. Section 5.41(a) provided that parties could execute a marital property agreement in contemplation of their marriage concerning property to be acquired thereafter. The statute did not restrict the breadth of subject matter or terms the agreement might contain. Noth-

ing in the statute excluded or precluded the parties' including therein the partition or exchange of any property they might acquire during marriage. Clearly, a property agreement need not provide for partition or exchange of any property. That is for the parties to determine. However, in order to partition or exchange property, the parties were required to do so by written agreement. 1981 Tex.Gen.Laws, ch. 782, at 2965 (Tex.Fam.Code § 5.44, since amended). Pursuant to section 5.41(a), the parties could enter into an agreement concerning their property and include therein the partition or exchange of their property "as they may desire."

Appellant's second point of error also is overruled. We affirm the judgment of the trial court.

JONES, J., not participating.

---

6. Appellant concedes that if the Texas Constitution authorizes the prenuptial partition and exchange of future personal earnings, sections 5.41 and 5.43 of the Family Code may now permit prenuptial partition of earnings. *See supra* note 2; Tex.Fam.Code Ann. §§ 5.41, 5.43 (Supp.1992). Appellant contends, however, that § 5.41 in effect at the time of the agreement in 1983 controls its validity rather than the amended version enacted in 1987. The trial court

upheld the agreement under the statute urged by appellant; we do likewise. Therefore, we need not decide whether the 1987 act could be applied.

7. The same act created sections 5.42 and 5.43 authorizing certain transactions between spouses not placed in issue here.